**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

THE HARVARD DRUG GROUP, L.L.C.,

        Plaintiff/Counter-Defendant,

v.                                   Case No. 09-13083

SENIOR RESPIRATORY SOLUTIONS, INC.
and DAVID McDONALD,

        Defendants/Counter-Plaintiffs.

_____/

**OPINION AND ORDER (1) GRANTING IN PART PLAINTIFF/COUNTER-
DEFENDANT'S "MOTION FOR JUDGMENT ON PLEADINGS AND FOR SUMMARY
JUDGMENT" AND (2) GRANTING IN PART DEFENDANTS/COUNTER-PLAINTIFFS'
"MOTION FOR PARTIAL SUMMARY JUDGMENT**"

Pending before the court is a "Motion for Judgment on Pleadings and for Summary Judgment," filed by Plaintiff/Counter-Defendant The Harvard Drug Group, L.L.C. ("Harvard Drug" or "Plaintiff"), and a "Motion for Partial Summary Judgment," filed by Defendants/Counter-Plaintiffs Senior Respiratory Solutions, Inc. ("Senior Respiratory") and David McDonald (collectively "Defendants"). Having reviewed the briefs, the court concludes a hearing on these motions is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant in part Plaintiff's motion and grant in part Defendants' motion.

**I. BACKGROUND**

This matter is a dispute primarily over pharmaceutical drugs that Harvard Drug delivered to Senior Respiratory, but for which Senior Respiratory has yet to pay the full purchase price, and Harvard Drug's alleged termination of a pharmaceutical supply contract that governed the sale of these drugs.

## A. The Parties

Harvard Drug is a wholesale pharmaceutical distributor and does business as Letco Medical.  (Pl.'s Mot. Br. ¶ 1; Def's Mot. Br. at 2.)  Its sole member is Generic Drug Holdings, Inc., which is a Delaware corporation with its principal place of business in Florida.  (Pl.'s Resp. to 8/14/09 Order to Show Cause ¶ 2.)  Senior Respiratory is a pharmacy and national mail order service company.  (Pl.'s Mot. Br. ¶ 2; Def.'s Mot. Br. at 2.)  It is a Texas corporation with its principal place of business in Texas.  (Pl.'s Am. Compl. ¶ 3.)  David McDonald is the owner and president of Senior Respiratory.  (Pl.'s Mot. Br. ¶ 2; Def.'s Mot. Br. at 3.)

## B. The Credit Application

In December 2007, Senior Respiratory applied to do business with Harvard Drug by completing a "Credit Application."  (Pl.'s Mot. Br. ¶ 3; Def.'s Mot. Br. at 2.)  The Credit Application indicated a desired credit limit of $20,000.  (Pl.'s Mot. Ex. A.)  The Credit Application stated that "[t]he undersigned agrees to pay service charges of 1.5% per month or the highest lawful rate, whichever is lower on any past due balance and all actual attorney fees and costs of collection."  (*Id.*)  It also contained a personal guaranty by McDonald, which stated, "I, David McDonald personally guarantee all payments of existing and future obligations and unconditionally waive the right to any amount paid pursuant to this provision."  (*Id.*)  It further stated that "shipments may be held if my account is delinquent or exceeds my established line of credit."  (*Id.*)  Below these provisions, McDonald signed in the line designated for "Signature of Guarantor."  (*Id.*)

Although there is no documentation of an increased credit limit attached to the pleadings or motions, both parties agree that Harvard Drug granted a credit limit of

$150,000 to Senior Respiratory, (Pl.'s Mot. Br. ¶ 8; Def.'s Ans. Ex. A, McDonald
Affidavit ¶ 4), and that "payment was due within ten days from the date of the invoice for
brand products and by the tenth of the following month for generic products" (Def.'s
Counterclaim ¶ 8; Pl's Ans. ¶ 8).

### C. The Security Agreement

On December 21, 2007, Senior Respiratory and Harvard Drug entered into a
"Security Agreement" pursuant to which Senior Respiratory granted Harvard Drug "a
security interest in all of its personal property." (Pl.'s Mot. Ex. H.) This security interest
secured payment of "all obligations and liabilities of [Senior Respiratory] to [Harvard
Drug] with respect to certain goods furnished by it or any of its divisions to [Senior
Respiratory] on open account heretofore or which may hereafter be furnished to [Senior
Respiratory] until the total of said indebtedness is fully paid." (*Id.*) On February 21,
2008, Harvard Drug perfected its security interest by filing a "UCC Financing Statement"
with the Texas Secretary of State. (Pl.'s Am. Compl. Ex. C.)

### D. The Prime Vendor Agreement

Around October 1, 2008, Senior Respiratory acquired the unit dose mail order
pharmacy division of Praxair Healthcare Services, Inc. (Def.'s Ans. Ex. A, McDonald
Affidavit ¶ 7.) As a result of this acquisition, Senior Respiratory's sales volume for
certain products supplied by Harvard Drug increased by 200%. (*Id.*)

On October 21, 2008, Harvard Drug and Senior Respiratory entered into a
"Prime Vendor Agreement" ("the Agreement"). (Pl.'s Mot. Ex. B.) Under the
Agreement, Senior Respiratory agreed to use Harvard Drug as its "direct source of
primary pharmacy requirements" for two respiratory pharmaceutical products: Sandoz

3

Brand Generic Duoneb and Sepracor Brand Brovana.  (*Id.* ¶ 1, Schedule 1.)  Senior

Respiratory was obligated to make a minimum monthly purchase of these drugs.  (*Id.* ¶

3.)  The term of the contract was for two years and either party could terminate it upon

ninety-day written notice, with or without cause.  (*Id.* ¶ 2.)

     With respect to the credit terms, the provision contained a provision which stated:

> **5. Credit Terms** Payment terms for the generic product shall be the net
> invoice price due for invoices billed the 1st through the 31st, due the 10th
> of the following month.  Payment terms for the brand product shall be the
> net invoice price due the 10th day-following receipt of goods. . . . [Senior
> Respiratory] agrees to pay all invoices in full and will not take deductions
> on these invoices until a credit memo has been issued to authorize the
> deduction. [Senior Respiratory] agrees to report . . . billing discrepancies
> within 30 days. [Harvard Drug]'s customer service department will issue all
> credit memos due within 30 days from the date that the request for credit
> is reported.  In the event that [Senior Respiratory] does not comply with
> the above terms, [Harvard Drug] reserves the right to place [Senior
> Respiratory] accounts on hold, without the same constituting a breach
> hereunder.

(*Id.* ¶ 5.)

     The Agreement also contained an integration or merger clause.  This clause

stated:

> **13. Entire Agreement** This Agreement is the entire agreement between
> the parties hereto relating to the subject matter hereof, and it cancels and
> supersedes all earlier agreements, written or oral relating to the subject
> matter hereof.  No waiver, modification or change of any of the terms of
> this Agreement shall be valid unless in writing and signed by duly
> authorized representatives of both parties hereto.

(*Id.* ¶ 13.)

     Pursuant to the Agreement, Harvard Drug delivered the respiratory

pharmaceuticals to Senior Respiratory.  Through May 27, 2009, Senior Respiratory had

ordered and paid for over $1.3 million in pharmaceutical products from Harvard Drug.

(Pl.'s Ans. ¶ 9; Def.'s Ans. Ex. A, McDonald Affidavit ¶ 5.)

4

**E. Credit Limit Increase Request and Denial**

In December 2008, Senior Respiratory requested an increase of its credit limit from $150,000 to $500,000, which it stated it needed because of a "substantial increase" in its sales volume. (Def.'s Counterclaim ¶ 16; Pl.'s Ans. ¶ 16.) After requesting certain financial documentation from Senior Respiratory, Harvard Drug eventually denied the request for an increase in credit limit. (Def.'s Counterclaim ¶¶ 17-18, 22; Pl.'s Ans. ¶¶ 17-18, 22.)

**F. Alleged Refusal To Ship**

On May 29, 2009, Senior Respiratory alleges that in addition to denying its request for an increased line of credit, Harvard Drug informed McDonald that it was refusing to ship any more products to Senior Respiratory. (Def.'s Counterclaim ¶ 22.) Harvard Drug disputes that it stated that it was refusing to ship the products and notes that it sold and shipped goods to Senior Respiratory on June 1, 2009. (Pl.'s Ans. ¶ 22.) Harvard Drug contends that as of June 2, 2009, it "declined to approve any additional orders from Senior Respiratory until the past due amounts were paid and until the balance was reduced below the credit limit." (*Id.*)

During the week of June 1, 2009, Senior Respiratory attempted to place additional orders with Harvard Drug, but Harvard Drug refused to "approve further orders until the credit balance was paid down and the invoices were brought current." (Pl.'s Mot. Ex. D. Heidel Affidavit ¶ 6.)

5

### G. Outstanding Invoices

To date, the following invoices, which total $157,432.50, are outstanding:  May 4,

2009 ($3,148); May 4, 2009 ($23,040); May 7, 2009 ($31, 680); May 20, 2009

($3,255.40); May 20, 2009 ($15,174); May 20, 2009 ($20,160); May 26, 2009

($18,967.50); May 27, 2009 ($23,040); June 1, 2009 ($18,967.50).  (Pl.'s Am. Compl.

Ex. D, Statement of Account; Def.'s Ans. Ex. A, McDonald Affidavit ¶ 15.)  Each of

these invoices states that a finance charge of 1.5% per month will be charged on

overdue amounts.  (Def.'s Mot. Ex. J.)

Neither party disputes that the full amount of these invoices has not been paid.

Senior Respiratory admits that it "has not paid Plaintiff the full amount charged by

Plaintiff for the products [Senior Respiratory] ordered and received."  (Def.'s Ans. ¶ 15.)

Instead, it has been making weekly payments of $1,000, including during the briefing of

the present motions.  (Def.'s Mot. Br. at 8; Pl.'s Reply at 2 n.3).  The parties are

practically in agreement as to the current principal balance of these invoices.[1]

### G. The Present Litigation

On August 5, 2009, Harvard Drug filed the present action, and on August 26,

2009, filed an amended complaint.  In its complaint, Harvard Drug alleges four counts:

(1) breach of contract by Senior Respiratory, (2) breach of personal guaranty by

McDonald, (3) declaratory judgment with respect to its security interest, and (4) account

---

[1]Harvard Drug last stated the principal amount as $132,432.40 in its response on
December 14, 2009.  (Pl.'s Resp. at 2.)  Senior Respiratory last stated the principal
amount as $129,848.40 in its reply on December 21, 2009, noting that it had made four
additional payments of $1,000 since its last pleading.  (Def.'s Resp. at 5.)  In its reply on
December 7, 2009, Harvard Drug stated that it "believes that the parties can agree on
the principal amount of unpaid invoices as of the date of the hearing or judgment."  (Pl.'s
Reply at 2-3 n.3.)

stated.  On September 15, 2009, Defendants filed an answer as well as a counterclaim

for "breach of express/oral contract" and a counterclaim for "breach of implied contract."

## II. STANDARD

### A. Judgment on the Pleadings

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for

judgment on the pleadings "[a]fter the pleadings are closed--but early enough not to

delay trial."  Fed. R. Civ. P. 12(c).  When ruling on a Rule 12(c) motion, the court must

take as true "all well-pleaded material allegations of the pleadings of the opposing

party," and "the motion may be granted only if the moving party is nevertheless clearly

entitled to judgment."  *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th

Cir. 2007) (quoting *So. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479

F.2d 478, 480 (6th Cir.1973)).  However, the court "need not accept as true legal

conclusions or unwarranted factual inferences."  *Id.* at 581-82 (quoting *Mixon v. Ohio*,

193 F.3d 389, 400 (6th Cir.1999)).  The court is to grant a Rule 12(c) motion "when no

material issue of fact exists and the party making the motion is entitled to judgment as a

matter of law."  *Id.* at 582 (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946

F.2d 1233, 1235 (6th Cir.1991)).  "There must be no material issue of fact that could

prevent judgment for the moving party."  *Monroe Retail, Inc. v. RBS Citizens, N.A.*,

No.074263, 2009 WL 4749352, at *3 (6th Cir. Dec. 14, 2009).

### B. Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper when

there is no genuine issue as to any material fact and the moving party is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "In deciding a motion for summary

7

judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party discharges its burden by "'showing' –that is, pointing out to the district court– that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter,* 369 F.3d 906, 909 (2004) (citing *Celotex*, 477 U.S. at 325). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton,* 369 F.3d at 909 (citing *Matsushita*, 475 U.S. at 587 (1986)). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52.

### III. DISCUSSION

Plaintiff seeks judgment on the pleadings with respect to Counts I, II, and III of its complaint, and Defendants filed a motion for summary judgment with respect to these same counts. Plaintiff also seeks a judgment on the pleadings with respect to Count IV of its complaint and "dismissal or summary judgment" with respect to Counts I and II of Senior Respiratory's counterclaims.

The court has subject matter jurisdiction over this case based on diversity of citizenship. *See* 28 U.S.C. § 1332. "Under the *Erie* doctrine, federal courts sitting in diversity apply the substantive law of the forum state and federal procedural law." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009). Also, the parties agreed in the Agreement that it was to be "governed by and construed in accordance with the laws of the State of Michigan." (Pl.'s Mot. Ex. F ¶ 16.) Accordingly, the court will apply Michigan law.

### A. Harvard Drug's Claims

### 1. Counts I, II, and III

### a. Count I - Breach of Contract

In its motion, Harvard Drug alleges that Senior Respiratory breached the contract when it failed to pay for the pharmaceutical drugs that it received. (Pl.'s Mot. Br. at 7.) Senior Respiratory asserts that it did not have to pay the invoices in full because Harvard Drug materially breached the Agreement when it gave notice of termination on May 29, 2009. (Def.'s Resp. at 15.)

When interpreting a contract, the court must construe the language "according to its plain and ordinary meaning, and technical or constrained constructions are to be

9

avoided." *Dillon v. DeNooyer Chevrolet Geo*, 550 N.W.2d 846, 848 (Mich. Ct. App. 1996). The court "does not have the right to make a different contract for the parties" when the terms of the contract are unambiguous. *Sheldon-Seatz, Inc. v. Coles*, 29 N.W.2d 832, 834-35 (Mich. 1947). The question of whether a contract is ambiguous is a question of law. *Port Huron Educ. Ass'n, MEA/NEA v. Port Huron Area Sch. Dist.*, 550 N.W.2d 228, 237 (Mich. 1996). But where the language of the contract is "unclear or susceptible to multiple meanings," then the interpretation of the contract is a question of fact. *Id.*

In Michigan, the Uniform Commercial Code ("U.C.C.") applies to "transactions in goods." Mich. Comp. Laws § 440.2102. The present case involves the sale of pharmaceutical drugs, which are goods under the U.C.C. *See* Mich. Comp. Laws § 440.2105(1). Accordingly, Michigan's adoption of the U.C.C. applies to this case.

Under the U.C.C., "[t]he buyer must pay at the contract rate for any goods accepted." Mich. Comp. Laws. § 440.2607(1). The contract in the present case required Senior Respiratory to pay for generic drugs by the tenth of the following month and brand drugs within ten days of receipt. (Pl.'s Mot. Ex. B § 5.) It is undisputed in this case that Senior Respiratory accepted the pharmaceutical drugs but has not paid the contract rate within in the time provided for by the contract. (*See* Def.'s Ans. ¶ 15 ("Defendants admit that [Senior Respiratory] has not paid Plaintiff the full amount charged by Plaintiff for the products [Senior Respiratory] ordered and received.").) Thus, Senior Respiratory has breached the Prime Vendor Agreement. It is no defense to payment of the goods already accepted that Harvard Drug allegedly terminated the Agreement on May 29, 2009. *See* Mich. Comp. Laws. § 440.2607(1). This alleged

10

breach would relieve Senior Respiratory of its obligation under the contract to continue to order drugs from Harvard Drug, enable it to cover by purchasing from a different supplier, and to seek damages from Harvard Drug for the wrongful termination. *See* Mich. Comp. Laws § § 440.2610; 440.2712; 440.2713; 440.2715.  However, it does not relieve Senior Respiratory of its obligation under the contract to pay for the goods already accepted.  *See id.* § 440.2607(1).  Accordingly, Harvard Drug is entitled to judgment as a matter of law, and its motion for judgment on the pleadings on this count with respect to the Agreement is granted.

Defendants characterize Count I as being premised on the Credit Application and argue in their motion for summary judgment that the integration clause in the Agreement superseded the Credit Application.  (Def.'s Resp. at 11-15; Def.'s Mot. Br. at 9-15.) Although the pleading of Count I is not a model of clarity, it is reasonably construed as being based on the Prime Vendor Agreement.  While it makes reference to the Credit Application, it also states that Senior Respiratory "ordered certain services and products from Harvard Drug, received them, and agreed to pay for them" and that Senior Respiratory "agreed to pay for the services and products it ordered and received from Harvard Drug."  (Pl.'s Am. Compl. ¶¶ 19, 20.)  Senior Respiratory ordered the unpaid products in question in this case pursuant to the Agreement.  Thus, this breach of contract claim can reasonably be construed as pertaining to the Agreement.

To the extent that Count I is based on the Credit Application,[2] the court will grant summary judgment for Defendants.  Defendants argue that any prior agreements

---

[2] Whether the Credit Application survives is material because it includes a provision for attorney's fees and costs, whereas the Prime Vendor Agreement does not.

11

regarding the terms of credit that were not included in the Agreement were superseded

by its integration clause.  (Def.'s Mot. at 9-15.)  Plaintiff argues that the Credit

Application survived the execution of the Prime Vendor Agreement because the Prime

Vendor Agreement was not a complete and exclusive statement of all terms of the

parties' agreement.  (Pl.'s Resp. at 3-7.)  Under the U.C.C.,

> Terms with respect to which the confirmatory memoranda of the parties
> agree or which are otherwise set forth in a writing intended by the parties
> as a final expression of their agreement with respect to such terms as are
> included therein may not be contradicted by evidence of any prior
> agreement or of a contemporaneous oral agreement but may be explained
> or supplemented
>
> > (a) by course of dealing or usage of trade (section 1205) or
> > by course of performance (section 2208)
> >
> > (b) by evidence of consistent additional terms unless the
> > court finds the writing to have been intended also as a
> > complete and exclusive statement of the terms of the
> > agreement.

Mich. Comp. Laws § 440.2202.[3]

The Prime Vendor Agreement states that it is "the entire agreement between the

parties hereto relating to the subject matter hereof" and that it "cancels and supersedes

all earlier agreements, written or oral relating to the subject matter hereof."  (Pl.'s Mot.

Ex. B ¶ 13.)  Also included in the Agreement is a lengthy provision detailing the credit

terms.  (*Id.* ¶ 5.)  Thus, the Agreement appears on its face to be a complete and

exclusive statement of the terms of the contract regarding credit.  Moreover, the

Agreement explicitly provided a remedy for Senior Respiratory's failure to comply with

---

[3]The cases cited by the parties in their briefs regarding Defendant's motion for
summary judgment are inapposite.  The cases cited by Defendant do not involve
contracts for the sale of goods and thus did not apply the U.C.C.  The cases cited by
Plaintiff involved contracts that did not contain an integration clause.

the terms of payment when it stated that Harvard Drug reserved the right to place

Senior Respiratory's accounts on hold if it failed to comply.  (*Id.*)  Harvard Drug could

have protected itself by including attorney's fees and costs for collection in the "Credit

Terms" provision of the Prime Vendor Agreement.   However, the Agreement made no

mention of these terms as a remedy if Senior Respiratory failed to pay.  Because failure

to pay on time was the subject matter of the Prime Vendor Agreement, the Prime

Vendor Agreement supersedes these prior additional terms concerning attorney's fees

and costs for collection.[4]  *See* Mich. Comp. Laws § 440.2202.  Accordingly, the court

will grant Defendant's motion for summary judgment as to Count I to the extent it was

based on the Credit Application.[5]

---

[4]Harvard Drug presents an alternative argument that "even if the subject matter
of the Credit Application and the Prime Vendor Agreement were somehow the same,"
the attorney fee provision is not barred because McDonald signed the Credit Application
on his own behalf.  (Pl.'s Mot. Br. at 18 n.7.)  This argument is contrary to its earlier
assertion that "[i]n its Credit Application, McDonald, *on behalf of Senior Respiratory*,
agreed to pay 'all actual attorney fees and costs of collection.'" (*Id.* at 18 (emphasis
added).)  Although the attorney's fee provision applied to the "undersigned" and
McDonald signed at the bottom as Guarantor, the Agreement makes it reasonably clear
that the "undersigned" refers to Senior Respiratory.  (See Pl.'s Mot. Ex. B ¶ A.)  For
instance, in other places in the Credit Application the word "Guarantor" was used, as
opposed to the "undersigned."  (*Id.*)  Also, the "undersigned" was required to perform
actions that were likely required of Senior Respiratory, like keep its licenses in good
standing and notify Harvard Drug if it was the subject of any proceedings before a
government agency.  (*Id.*)

[5]Harvard Drug also argues that it is entitled to interest at 1.5% for overdue
amounts based on the Invoices, which state, "A finance charge of 1.5% per month will
be computed on balances over 30 days old."  (Pl.'s Mot. Br. at 9.)  However, the
Agreement stated that the terms could not be modified or changed "unless in writing
and signed by duly authorized representatives of both parties hereto."  (Pl.'s Mot. Ex. B.
¶ 13.)  Adding an additional term to a contract constitutes a modification.  Because
these Invoices were not signed by Senior Respiratory, based on the plain language of
the contract, the interest rate is unenforceable.

### b. Count II - Breach of Guaranty

Harvard Drug alleges that David McDonald breached the personal guaranty when he failed to pay Senior Respiratory's debt owed to Harvard Drug.  (Pl.'s Mot. Br. at 9.)  Defendants do not dispute that McDonald has failed to pay Senior Respiratory's debt, but instead argue that this obligation has been extinguished.  (Def.'s Ans. ¶ 1; Def.'s Mot. Br. at 16-19.)

On December 11, 2007, McDonald signed a personal guaranty within the Credit Application, which stated, "I, David McDonald personally guarantee all payments of existing and future obligations."  As explained above, Senior Respiratory was obligated to pay at the contract rate for the drugs it accepted and it failed to do so within the time provided for by the contract.  At this point, McDonald became obligated to pay pursuant to his personal guaranty.  In their Answer, "Defendants admit that McDonald has not personally made any payments to Plaintiff."  (Def.'s Ans. ¶ 1.)  Thus, McDonald has breached the personal guaranty.  *See First Nat'l Bank of Ypsilanti v. Redford Chevrolet Co.*, 258 N.W. 221, 223 (Mich. 1935) ("Contracts of guaranty are to be construed like other contracts.").

Defendants argue that McDonald's guaranty was extinguished by the integration clause in the Prime Vendor Agreement.  (Def.'s Mot. Br. at 14-15.)  The court finds that the Prime Vendor Agreement did not extinguish the personal guaranty.  The Prime Vendor Agreement stated that it was the "entire agreement between the parties hereto" and McDonald was not a party to the Prime Vendor Agreement.  (Pl.'s Mot. Ex. B ¶ 13.) Moreover, the Agreement stated it cancelled all earlier agreements "relating to the subject matter hereof" and nothing in the Agreement addresses a personal guaranty.

14

(*Id.*)  Thus, the Agreement is not the "complete and exclusive statement" of the parties

with respect to the personal guaranty of McDonald, and this consistent prior agreement

is not extinguished by the integration clause in the Prime Vendor Agreement.  Mich.

Comp. Laws § 440.2202.

Defendants also argue that McDonald's obligations were extinguished on

November 18, 2008, when Senior Respiratory paid all outstanding obligations under the

Credit Application.  (Def.'s Mot. Br. at 16.)  Defendants' argument, however, ignores the

plain language of the guaranty.  The guaranty did not merely guarantee payment of

obligations arising under the Credit Application.  Instead, McDonald "personally

guarantee[d] all payments of existing and future obligations."  (Pl.'s Mot. Ex. A.)  The

obligations arising under the Prime Vendor Agreement constitute such future obligations

for which McDonald promised to pay if Senior Respiratory did not.  While it is true that a

"surety cannot be held beyond the precise terms of his agreement," *Bandit Indus., Inc.*

*v. Hobbs Int'l, Inc.*, 620 N.W.2d 531, 535 (Mich. 2001), the precise terms of McDonald's

agreement obligated him to pay *all future obligations*, not just those arising out of the

Credit Application.

Finally, Defendants argue that McDonald's guaranty was discharged because the

Prime Vendor Agreement materially changed the obligations under his guaranty.

Under Michigan law, "[a]ny material alteration of a principal debt or obligation operates

to completely discharge any guaranty of that debt or obligation."  *Wilson Leasing Co. v.*

*Seaway Pharmacal Corp.*, 220 N.W.2d 83, 88-89 (Mich. 1974).  In this case, McDonald

guaranteed all future obligations of Senior Respiratory, not merely those arising under a

specific loan or credit extension.  The Prime Vendor Agreement did not materially

15

change this obligation because he expressly agreed to be bound by all future

obligations.  Accordingly, the court will grant Plaintiff's motion for judgment on the

pleadings with respect to Count II, and deny Defendant's motion for summary judgment

with respect to this count.

### c. Count III - Declaratory Judgment to Foreclose on Security Interest

Harvard Drug requests a declaratory judgment stating that it is entitled to

foreclose upon its security interest.  (Pl.'s Mot. Br. at 13.)  Defendants argue that the

Security Agreement was superseded by the integration clause in the Agreement.

(Def.'s Mot. Br. at 19.)

Like the guaranty, the court finds that the Prime Vendor Agreement did not

extinguish the Security Agreement.  The Prime Vendor Agreement stated it cancelled all

earlier agreements "relating to the subject matter hereof" and nothing in the Agreement

addresses a security interest.  (Pl.'s Mot. Ex. B ¶ 13.)  A security agreement is a

different type of agreement from a contract for the sale of goods in that it creates an

inchoate security interest in another's property.  No part of the Prime Vendor Agreement

can be construed as relating to this subject matter.  Thus, the Prime Vendor Agreement

is not the "complete and exclusive statement" of the parties with respect to the Security

Agreement, and this consistent prior agreement is not extinguished by the integration

clause in the Prime Vendor Agreement.  Mich. Comp. Laws § 440.2202.

Defendants present no additional challenge to the validity of the Security

Agreement.  As it is undisputed that Senior Respiratory has not paid for goods that it

has received, the court finds that Harvard Drug is entitled to foreclose on its security

interest pursuant to its rights under the Security Agreement and Article 9 of the U.C.C.

16

as adopted by Michigan.  Accordingly, the court will grant Plaintiff's motion for judgment on the pleadings with respect to Count III, and deny Defendant's motion for summary judgment as to this count.

### 2. Count IV - Account Stated

Harvard Drug filed a motion for judgment on the pleadings with respect to its claim for an account stated in Count IV.  An account stated is "a balance struck between the parties on a settlement."  *Keywell & Rosenfeld v. Bithell*, 657 N.W.2d 759, 777 (Mich. Ct. App. 2002) (quoting *Watkins v. Ford*, 37 N.W. 300 (1888)).  "[W]here a plaintiff is able to show that the mutual dealings which have occurred between two parties have been adjusted, settled, and a balance struck, the law implies a promise to pay that balance."  *Id.*

Pursuant to Mich. Comp. Laws § 600.2145, if a plaintiff "makes an affidavit of the amount due and attaches to the affidavit a copy of the account" and serves these on the defendant, then "the affidavit 'shall be deemed prima facie evidence of indebtedness, unless the defendant with his answer, by himself or agent, makes an affidavit and serves a copy thereof on the plaintiff or his attorney denying the [indebtedness].'" *Klochko Equipment Rental Co. v. Village Green Construction, L.L.C.*, No. 235599, 2003 WL 21398305 (Mich. Ct. App. June 17, 2003) (quoting Mich. Comp. Laws § 600.2145) (alteration in original).  In addition, an account stated may be proven by "evidence of an express understanding, or of words and acts, and the necessary and proper inferences from them."  *Keywell & Rosenfeld*, 657 N.W.2d at 777-78 (quoting *Kaunitz v. Wheeler*, 73 N.W.2d 263 (1955)).

17

Harvard Drug attached to its amended complaint an affidavit of its Vice President of Credit Sales, John H. Heidel.  (Pl.'s Am. Compl. Ex. D.)  In the affidavit, Heidel stated that "Defendants were indebted to Harvard Drug for $151,432.40, plus interest, costs and attorney fees, over and above all legal counterclaims, for products and services provided to Defendant Senior Respiratory Solutions, Inc." (*Id.*)  Attached to the affidavit is a statement of the account, which lists nine invoices, the date of the invoice, the due date, the invoice amount, payments made on the invoice, and the balance due on the account.  (*Id.*)  The statement of the account provided for a total balance due of $151,432.40.  (*Id.*)

In their answer, Defendants attached an affidavit of McDonald.  (Def.'s Answer Ex. A.)  In the affidavit, McDonald stated that Senior Respiratory "received goods [from] Harvard" with the exact same invoice amounts that Harvard Drug listed in its statement of account.  (*Id.* ¶ 15.)  McDonald also stated that Senior Respiratory has made certain payments toward these invoices, including a payment of $1,584.10 on May 27, 2009, and weekly payments of $1,000.00.  (*Id.* ¶ 17-18.)  Based on these payments, McDonald stated that Senior Respiratory, "if indebted to Plaintiff at all, owes no more than $142,848.40."  (Id. ¶ 20.)

Based on these affidavits, it is undisputed that Senior Respiratory received pharmaceuticals from Harvard Drug for a total invoiced amount of $157,432.50.  It is also undisputed that Senior Respiratory has been making weekly payments of $1000.00 towards these invoices.  Pursuant to Mich. Comp. Laws § 600.2145, Plaintiff made an affidavit of the amount due, attached a copy of the account, and served these documents on Defendants.  Defendants filed an affidavit in response; however, the

18

affidavit did not deny the deny the accuracy of the invoiced amount of $157,432.50 or

provide a valid defense to payment.  Accordingly, Harvard Drug has made out a claim

for an account stated in the invoiced amount of $157,432.50 minus the amounts that

Senior Respiratory has paid on these invoices to date.  The parties are in agreement

that this amount is at least $129,848.40 as of December 21, 2009.  (Def.'s Reply at 5.)

The court will therefore grant Plaintiff's motion for judgment on the pleadings with

respect to Count IV.

### B. Senior Respiratory's Counterclaims

Harvard Drug seeks summary judgment or dismissal of Senior Respiratory's

counterclaims.  (Pl.'s Mot. Br. at 13-17.)  Both parties submitted and refer to material

outside of the pleadings.  Accordingly, the court will treat this motion as one for

summary judgment under Rule 56.  *See* Fed. R. Civ. P. 12(d).

### 1. Count I - Breach of Express Contract

In Senior Respiratory's counterclaim, it alleges that Harvard Drug breached the

Prime Vendor Agreement "by way of its May 29, 2009 unilateral notification of refusal to

continue supplying ordered products to [Senior Respiratory], and subsequent refusal to

supply any products to [Senior Respiratory]."[6]  (Def.'s Counterclaim ¶ 28.)  Specifically,

it alleges that Harvard Drug terminated the contract during a conversation with

McDonald.  (Def.'s Resp. at 17.)  Harvard Drug argues that it is entitled to summary

---

[6]Senior Respiratory initially alleged that Harvard Drug breached a contract by
failing to extend it a line of credit of $150,000.  In its response to Harvard Drug's motion,
it withdrew this claim.  (Def.'s Resp at 18 n.5.)

19

judgment on this claim because its refusal to approve orders after June 1, 2009 was justified because Senior Respiratory exceeded the credit limit and was past due on invoices.  (Pl.'s Mot. Br. at 16.)

The court finds that there is a genuine issue of material fact regarding the discussion that took place between McDonald and Harvard Drug on May 29, 2009, and therefore Harvard Drug is not entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  The Agreement provided for termination only upon ninety-day written notice, and if Plaintiff's allegations are true that Harvard Drug unilaterally terminated the contract in its discussion with McDonald, then Harvard Drug breached the contract by failing to give proper notice of termination.

Harvard Drug's argument that it was entitled to refuse to approve orders on June 1, 2009 fails because the alleged termination took place on May 29, 2009.  On this date, Harvard Drug was not entitled to terminate the contract.  It is undisputed that the first payment due on the invoices in question in this case was June 1, 2009.  (Pl.'s Mot. Br. at 16; Def.'s Resp. at 17.)  It is also undisputed that as of May 29, 2009, Senior Respiratory had not exceeded the $150,000 credit limit.  (Pl.'s Am. Compl. Ex. D, Statement of Account; Def.'s Ans. Ex. A, McDonald Affidavit ¶ 15.)  Therefore, construing the facts in the light most favorable to the Defendant, if Harvard Drug terminated the contract on May 29, 2009, then it breached the Prime Vendor Agreement.

Harvard Drug also argues that even if it anticipatorily repudiated the contract, it retracted that repudiation by fully performing on June 1, 2009, by sending the shipment that Harvard Drug ordered.  (Pl.'s Reply at 4 n.5)  Under the U.C.C., "[u]ntil the

20

repudiating party's next performance is due he can retract his repudiation unless the aggrieved party has since the repudiation cancelled or materially changed his position or otherwise indicated that he considers the repudiation final."  Mich. Comp. Laws § 440.2611.  But even if Harvard Drug retracted, the court cannot make a determination of whether the retraction was proper under this statute.  Without knowing what was said during that conversation, it is impossible to determine whether Defendants indicated that they considered the repudiation final or otherwise cancelled the contract. Moreover, it is unclear whether Senior Respiratory materially changed its position, for instance by entering into another contract for the purchase of these products.[7] Accordingly, further factual development is necessary, and the court will deny Plaintiff's motion for summary judgment.

### 2. Count II - Breach of Implied Contract

Senior Respiratory alleges a breach of an implied contract.  Specifically, it alleges there was an implied contract to "supply [Senior Respiratory] with products covered under the Primary Vendor Agreement as ordered by [Senior Respiratory] during the two year term of the Agreement at the price rates established by way of the Agreement." (Def.'s Counterclaim ¶ 31.)  Harvard Drug argues that this claim should be dismissed because an express contract governs the same subject matter.  (Pl.'s Mot. Br. at 18.) Senior Respiratory responds that it is entitled to plead in the alternative under Rule 8(d)(2).  (Def.'s Resp. at 19.)

---

[7]According to Plaintiff, Senior Respiratory has not provided a statement of its damages as required by Rule 26(a).

Under Michigan law, "a contract will be implied only if there is no express contract covering the same subject matter." *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 903 (Mich. Ct. App. 2006). Here, Defendant pleaded the existence of an "implied contract" based explicitly on an express contract, the Prime Vendor Agreement. Thus, this counterclaim fails as a matter of law.

Senior Respiratory points to Harvard Drug's statue of frauds affirmative defense and states that this defense would make the express agreement unenforceable. However, the statue of frauds defense was not aimed at the Prime Vendor Agreement, which is clearly in writing and signed, but instead was aimed at this purported implied contract, which would not be in writing or signed. (See Pl.'s Reply at 5 n.6.) As discussed above, the court finds that the Prime Vendor Agreement governed the relationship of the parties in this case with respect to the purchase and sale of the pharmaceutical products. Therefore, the court will grant Plaintiff's motion for summary judgment and will dismiss Count II of Senior Respiratory's counterclaims.

### IV. CONCLUSION

For the reasons stated above,

IT IS ORDERED that Plaintiff's "Motion for Judgment on the Pleadings or for Summary Judgment" is GRANTED IN PART. It is granted as to all counts of Plaintiff's complaint, with the exception of any claim premised on the Credit Application or Invoices in Count I. Plaintiff shall not be entitled to attorney's fees and costs based on the Credit Application or Invoices. The motion is also granted as to Count II of Senior Respiratory's counterclaims. It is denied as to Count I of Senior Respiratory's counterclaims.

22

IT IS FURTHER ORDERED that Defendant's "Motion for Partial Summary Judgment" is GRANTED IN PART.  It is granted only as to Plaintiff's claim premised on the Credit Application and Invoices, and is denied in all other respects.

The only claim that remains in this case is Count I of Senior Respiratory's counterclaims, in which it alleges that Plaintiff breached the Prime Vendor Agreement "by way of its May 29, 2009 unilateral notification of refusal to continue supplying ordered products" to Senior Respiratory.  (Def.'s Counterclaim ¶ 28.)

      s/Robert H. Cleland             
      ROBERT H. CLELAND
      UNITED STATES DISTRICT JUDGE

Dated:  January 13, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 13, 2010, by electronic and/or ordinary mail.

      s/Lisa Wagner                
      Case Manager and Deputy Clerk
      (313) 234-5522